UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKAYLA M.,<br><br>                                   Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>                                   Defendant. | Case No.: 24-cv-1343-SBC<br><br>**ORDER AFFIRMING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

      On July 30, 2024, Plaintiff Makayla M.[1] commenced this action against Defendant Commissioner of Social Security,[2] for judicial review under 42 U.S.C. § 405(g) of the denial of her application for supplemental security income benefits. (Dkt. No. 1.) Defendant filed the Administrative Record on September 30, 2024. (Dkt. Nos. 8-10.) Plaintiff filed her merits brief on January 15, 2025. (Dkt. No. 18.) Defendant filed an

---

[1]     The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2]     Frank Bisignano is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

opposition on February 12, 2025. (Dkt. No. 20.) Plaintiff filed a reply on February 26, 2025. (Dkt. No. 21.)

For the following reasons, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

### A. Factual and Procedural History

Plaintiff was born in 2001 and held previous part-time employment as a cashier and camp counselor. (AR 231, 310.)[3] On or about July 20, 2021, Plaintiff filed an application for supplemental security income ("SSI") under the Social Security Act. (AR 1206-12.) Plaintiff alleged that she had been disabled since March 3, 2014, due to gastroparesis, Postural Orthostatic Tachycardia Syndrome ("POTS"), cyclic vomiting, Superior Mesenteric Artery Syndrome, gastroesophageal reflux disease, asthma, nonalcoholic fatty liver disease, and anxiety. (AR 1206, 1228.) Plaintiff's application was denied on initial review and again on reconsideration. (AR 1108-12, 1123-27.) An administrative hearing was conducted on December 12, 2022, by Administrative Law Judge ("ALJ") William Mueller. (AR 1048.) During the administrative hearing, Plaintiff amended her alleged onset date to July 20, 2021. (AR 1053.) On August 15, 2023, the ALJ issued a decision concluding that Plaintiff had not been under a disability since July 20, 2021, the filing date of the application. (AR 18-30.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on June 18, 2024. (AR 1-7.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

///

///

---

[3]   "AR" refers to the Administrative Record filed on September 30, 2024. (Dkt. Nos. 8-10.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

### B. ALJ's Decision

In SSI cases, the Commissioner employs a five-step analysis outlined in 20 C.F.R. § 416.920 in rendering a decision on a claimant's claim. *See* 20 C.F.R. § 416.920; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999) (describing five steps). In this case, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since July 20, 2021, the filing date of her application. (AR 20.) At step two, the ALJ found that Plaintiff's severe impairments consisted of inflammatory bowel disease, neurodegenerative disorder of the central nervous system, and anxiety. (*Id.*) He determined that Plaintiff's medically determinable impairments of fibromyalgia, articulation disorder, POTS, and obesity were not severe. (AR 21-22.) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 22.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in [20 C.F.R. § 416.967(b)], except: can perform postural activities occasionally; and can perform non-public simple routine tasks." (AR 24.)

At step four, the ALJ found that Plaintiff had no past relevant work. (AR 29.) The ALJ determined at step five that Plaintiff could perform the requirements of the representative occupations of marker retailer, mail sorter, and router. (AR 29-30.) Therefore, the ALJ concluded that Plaintiff had not been under a disability since July 20, 2021. (AR 30.)

### C. Disputed Issues

Plaintiff asserts three grounds for remand, all relating to her POTS diagnosis: (1) the ALJ harmfully erred by failing to find her medically determinable impairment of POTS "severe" at step two; (2) the ALJ harmfully erred by failing to provide substantial evidence to reject the functional limitations assessed by Dr. Phong Dao, the consultative examiner, regarding POTS; and (3) the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony regarding POTS. (Dkt. No. 11 at 17-29.)

## II.   LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and a decision denying benefits will be set aside "only if it is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citations omitted). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration ("SSA") for further proceedings. *Id.*

## III.   DISCUSSION

### A.   ALJ's Evaluation of POTS at Step Two

Plaintiff first argues that the ALJ improperly evaluated the medical evidence in determining that Plaintiff's medically determinable impairment of POTS was not severe. (Dkt. No. 18 at 6-10.) Plaintiff's argument reflects a misunderstanding of the purpose of step two in the five-step analysis. The Court finds no harmful error occurred.

///

### 1. Applicable standards

At step two in the sequential evaluation, the Social Security Administration ("SSA") considers the medical severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). To be found disabled, a disability claimant must have a medically determinable physical or mental impairment or combination of impairments that is severe. *Id.* A "medically determinable" physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.* § 416.921. Once a medically determinable impairment is established, the SSA decides whether the impairment or combination of impairments is "severe." *Id.* A severe impairment is one "which significantly limits [the] physical or mental ability to do basic work activities[.]" *Id.* § 416.920(c). The impairment must meet the duration requirement; that is, it must be expected to result in death or must have lasted or be expected to last for a continuous period of at least twelve months. *Id.* § 416.909.

The requirement that an impairment be severe "allow[s] the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985) (citation omitted); *see also Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct 2287, 2297, 96 L.Ed.2d 119 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled[.]"); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("Step two, then, is a de minimis screening device used to dispose of groundless claims.") (citation modified).

### 2. ALJ's analysis of the severity of Plaintiff's POTS condition

The ALJ found that Plaintiff's impairment of POTS was nonsevere because:

> [I]t does not significantly limit the ability to perform basic work activities for 12 consecutive months. Syncope and fainting have not been documented by objective testing. Kaiser Permanente records also indicate instances of

>negative neurological findings, such as with weakness and headaches. Other records suggest the claimant denied headaches, weakness, or numbness.

(AR 21 (citations omitted).)

### 3. Analysis

POTS, or Postural Orthostatic Tachycardia Syndrome, is a condition that causes symptoms, such as a fast heart rate, dizziness, and fatigue, when an individual transitions from lying down to standing up. Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots [https://perma.cc/92BH-28UY] (last visited Sept. 17, 2025). POTS does not have a cure but treatments and lifestyle changes such as adjustments in diet, medications, and physical activity can help manage its symptoms. *Id.* Each case is different, and people with POTS may see symptoms come and go over a period of years. *Id.* Symptoms vary but may include dizziness or lightheadedness, especially when standing up, during prolonged standing in one position, or on long walks; fainting or near fainting; heart palpitations; fatigue; headaches; feeling sick; bloating; and disrupted sleep. *Id.*

Plaintiff contends that her medical records, which are comprised of nearly 6,000 pages, primarily from her treating providers at Kaiser Permanente, are replete with references to her POTS diagnosis. (Dkt. No. 18 at 7.) Plaintiff's records confirm her POTS diagnosis. (*See, e.g.,* AR 1519, 4190-91.) But while the records confirm that Plaintiff was diagnosed with POTS, a diagnosis alone does not establish the existence of an impairment. *See* 20 C.F.R. § 416.921; *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability. 'A claimant bears the burden of proving that an impairment is disabling.'" (citation omitted).) Here, Plaintiff appears to overstate the impact of POTS on her ability to perform basic work activities for a continuous period of at least twelve months. Many of the references to POTS in the record are the result of the diagnosis being carried over or repeated from prior medical records, and not necessarily because Plaintiff was experiencing POTS symptoms

or receiving treatment for POTS. (*See, e.g.*, AR 1337 (listing POTS as one of Plaintiff's diagnoses but noting "not having hypertensio[n] or tac[h]ycardia currently").) Indeed, most of Plaintiff's medical records relate not to POTS, but rather her repeated emergency room visits and hospitalizations for gastroparesis, a separate condition affecting the nerves and muscles in the stomach and interfering with the ability to digest food. Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/15522-gastroparesis [https://perma.cc/72FR-38P5 ](last visited Sept. 17, 2025).

Although Plaintiff states that her POTS diagnosis was assessed as "chronic, refractory, and worsening," (*see* Dkt. No. 18 at 7), this assessment was based solely on Plaintiff's self-report to her primary care provider. (AR 4205.) The primary care provider, in turn, consulted with a cardiologist, (*see* AR 4206), who confirmed Plaintiff's diagnosis and recommended only that Plaintiff increase her fluid and salt intake, start Midodrine (which Plaintiff had previously declined),[4] and call as needed for any increase in symptoms. (AR 4190-91.) Plaintiff's contention that she had disabling POTS symptoms "spanning years of multiple episodes of fainting, up to four to five times a day at one point" (*see* Dkt. No. 18 at 7), is not supported by her medical history. According to the record, during a telephone appointment on July 18, 2022, Plaintiff reported to her doctor that she had fainted *four to five times in the week since her discharge from the hospital*, where she had been admitted for nausea and vomiting due to gastroparesis, not POTS, (*see* AR 5853-54), not *four to five times a day* as Plaintiff claims. The record also does not reflect an

---

[4]   A different cardiologist previously suggested on January 14, 2020, that Plaintiff try Florinef (fludrocortisone acetate) or Midodrine for POTS, but Plaintiff decided to hold off as her symptoms were "better controlled" at that time. (AR 1519.) Her physician thus recommended that Plaintiff follow a high salt diet, intake water to prevent dehydration, change positions slowly, and increase cardio exercise. (*Id.*) Later that year, on August 18, 2020, Plaintiff again declined to take fludrocortisone or to adjust her other medications to try Midodrine. (AR 1397-98.)

"average [of] two syncopal episodes a day," as Plaintiff reported to the consultative examiner, Dr. Phong Dao, on February 7, 2023. (AR 6214-15.) Rather, Plaintiff complained intermittently of increases in her POTS symptoms, including in August and September 2020 (AR 1391, 1396-1400); during a hospital admission for gastroparesis in March 2022, at which time she stated that she was "hoping to get on disability for POTS," though she was not being treated for the condition at that time (AR 4251); and most significantly, between April and July 2022, when Plaintiff did have multiple emergency room and doctor's visits for syncopal episodes (AR 4190-91, 4193, 4198-203, 4216-17, 4866, 5790, 5854).[5] Additionally, while Plaintiff claims that her treating physician limited her to standing for only fifteen minutes at a time, this restriction was provided on August 6, 2020, in response to Plaintiff's request for a work note prescribing the use of a stool while she was working as a cashier at Home Depot, and applied prior to the relevant period of July 20, 2021, the date of her SSI application, and August 15, 2023, the date of the ALJ's decision. *See* 20 C.F.R. § 416.335 ("If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month."); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 999–1000 & n.1 (9th Cir. 2015) (citing 20 C.F.R. § 416.335).

Moreover, even if the ALJ erred by not considering POTS to be a severe impairment, such error was harmless.[6] "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen*,

---

[5]    Neither side addresses whether substantial evidence supports the ALJ's finding that Plaintiff's POTS did not meet the twelve-month durational requirement for a finding of disability.

[6]    *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("harmless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (citation modified).

482 U.S. at 146–47). The failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016), *accord Buck*, 869 F.3d at 1049 (finding any alleged error at step two harmless because the ALJ found severe impairments). Here, the ALJ determined that Plaintiff had three severe impairments: inflammatory bowel disease, neurodegenerative disorder of the central nervous system, and anxiety. (AR 20.) Thus, the ALJ did not commit reversible error by finding Plaintiff's POTS to be nonsevere.

Furthermore, step two is not meant to identify the impairments that should be considered when determining a claimant's residual functional capacity ("RFC"). *Buck*, 869 F.3d at 1048–49. "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). In fact, a claimant's residual functional capacity should be exactly the same regardless of whether certain impairments are considered "severe" or not. *Id*. Thus, an ALJ's failure to consider a claimant's impairments at step two would constitute harmful error only if he did not consider the limitations and restrictions imposed by those impairments in his assessment of Plaintiff's RFC. Here, the ALJ's decision reflects that he considered symptoms arising from Plaintiff's POTS when formulating her RFC. (*See* AR 24-25 (specifically referencing POTS and accounting for Plaintiff's assertions of seizures, syncope, nausea, pain, and weakness.) Thus, no harmful error occurred. *See Zahourek v. O'Malley*, No. 1:23-cv-01150-SKO, 2024 WL 3951003, at *7 (E.D. Cal. Aug. 27, 2024) (finding no harmful error at step two where ALJ "specifically stated that he considered all Plaintiff's impairments, severe and non-severe, in his analysis").

**B.    ALJ's Evaluation of Dr. Dao's Medical Opinion**

Plaintiff's second argument is that the ALJ erred by failing to provide substantial evidence to reject the functional limitations assessed by Dr. Dao regarding POTS. (Dkt.

No. 18 at 10-16.) Defendant counters that substantial evidence supports the ALJ's evaluation of Dr. Dao's opinion. (Dkt. No. 20 at 12-16.) The Court concurs with Defendant.

### 1. Applicable standards

Under the SSA's revised 2017 regulations, an ALJ is required to evaluate medical opinions by assessing their "persuasiveness." *See* 20 C.F.R. § 416.920c(a). In determining how "persuasive" a medical source's opinions are, the "most important factors" are supportability and consistency. *Id.*; *see also id.* § 416.920c(b)(2). The ALJ's decision must contain an explanation of how the ALJ considered the supportability and consistency factors. *Id.* § 416.920c(c)(2). The ALJ is also required to consider the treatment or examining relationship, specialization, and other factors, but his or her decision need not contain an explanation of how these factors were considered. *Id.* § 416.920c(b)(2), (c)(1)-(5); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ's explanation of the persuasiveness of a medical opinion must be supported by substantial evidence. *Woods*, 32 F.4th at 792.

### 2. Dr. Dao's opinion

Dr. Dao conducted an internal medicine evaluation of Plaintiff on February 7, 2023. (AR 6214-21.) With respect to her POTS condition, Dr. Dao recounted that Plaintiff told him that her diagnosis had been confirmed with a "tilt test." (AR 6214.) Plaintiff reported that she had had multiple fainting spells in the past, and the last time she had fainted was two days prior. (AR 6214-15.) She claimed a history of syncopal episodes about twice a day and stated that her last syncopal episode had occurred the night before. (AR 6215.) Plaintiff also stated that she took Midodrine for her POTS condition and used a four-wheeled walker for balance and fall prevention due to her history of frequent falls and fainting spells. (*Id.*)

With respect to POTS, Dr. Dao's impression consisted of: "History of [POTS] with frequent fainting spells. The claimant states that she experiences fainting spells about twice a day. Her last fainting spell was last night, per claimant. She is currently taking

[M]idodrine for her POTS condition." (AR 6219.) Dr. Dao's functional assessment, in relevant part, was that Plaintiff could lift and/or carry up to ten pounds frequently, up to twenty pounds occasionally, and could never lift more than fifty pounds; could stand and/or walk for thirty minutes without interruption with a walker and could stand and/or walk for two hours in an eight-hour workday. (AR 6220.) He further opined that Plaintiff needed an assistive device such as a walker for ambulation, she could walk for less than thirty feet without a walker, and a walker was medically necessary for fall prevention. (*Id.*)

### 3. ALJ's finding that Dr. Dao's opinion was "not persuasive"

The ALJ found the opinion of Dr. Dao to be "not persuasive." He reasoned:

> The medical opinion found that the claimant was limited to a modified light[7] exertional level with additional standing, walking, assistive device, postural, and manipulative limitations. The supportability factor does not support the medical opinion. The findings are not sufficiently supported by an extensive review of medical evidence, references to specific findings, or well-supported explanations. In addition, evidence from other medical or nonmedical sources is inconsistent with the medical opinion. For example, the claimant had normal range of motion of the musculoskeletal and no tenderness. On December 29, 2019, the claimant was negative for arthralgia and back pain. The claimant also exhibited normal range of motion, no edema, and no tenderness. On September 18, 2021, the claimant was negative for gait disturbance, joint pain, and back pain. Moreover, the assessment that the claimant required an assistive device is not consistent with the record. For example, on January 3, 2019, the claimant had an independent gait with no assistive devices. On February 27, 2020, the claimant had an independent gait and used no assistive devices. On February 25, 2020, the claimant was "negative for gait disturbance." On November 12, 2021, the claimant was ambulatory with a strong and steady gait. On June 26, 2022, the claimant was negative for gait disturbance. Accordingly, the medical opinion is not persuasive.

---

[7]   Light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b).

(AR 28 (citations omitted).)

### 4. Analysis

#### a. Supportability

"Supportability" is the extent to which a medical source supports their opinion with relevant objective medical evidence and supporting explanations. 20 C.F.R. § 416.920c(c)(1). Here, in finding that Dr. Dao's opinion was not supported, the ALJ stated, "The findings are not sufficiently supported by an extensive review of medical evidence, references to specific findings, or well-supported explanations." (AR 28.) The ALJ's determination is supported by substantial evidence. First, although Dr. Dao states in his opinion that Plaintiff's medical records were available and reviewed, it is not clear that the physician had all of Plaintiff's records before him. The medical records in this case are extensive—nearly 6,000 pages of records are contained in the administrative record before the Court, the majority of which relate to Plaintiff's multiple emergency room and hospital admissions for gastroparesis, not POTS—yet Dr. Dao refers only briefly to, at most, four medical notes and records dated in July and August 2022 in his opinion. (AR 6215, 6216.)

Second, Dr. Dao referred to only minimal objective findings to support his assessment as it relates to POTS. On physical examination, he noted, with respect to gait and balance, that Plaintiff came into the examination room with a four-wheeled walker and ambulated at a slow pace when she was asked to ambulate without her walker. (AR 6217.) Dr. Dao also relied on Plaintiff's statement that her POTS diagnosis had been confirmed with a tilt test,[8] (*see* AR 6214), but her medical records indicate that a tilt table test may not have been performed. (*See* AR 1519 (noting Kaiser cardiologist's statement that "[w]e

---

[8]  A tilt table test shows how a patient's body responds to standing up after lying down and is used by healthcare providers for people who faint. Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/17043-tilt-table-test [https://perma.cc/K85M-XHY5] (last visited Sept. 17, 2025).

rarely do Tilt table tests anymore"); AR 5790 (reflecting that Plaintiff had not had a tilt table test).) Indeed, Dr. Dao's functional assessment relies heavily on Plaintiff's subjective reports. (AR 6214-15, 6219 (reflecting Plaintiff's statements about fainting spells and syncopal episodes).) Substantial evidence supports the ALJ's supportability finding.

### b. Consistency

"Consistency" is the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The ALJ here found that Dr. Dao's opinion was inconsistent with evidence from other medical or nonmedical sources. (AR 28.) In doing so, he cited to multiple medical records reflecting normal findings, including that Plaintiff was negative for gait disturbance. (*Id.*, citing AR 3499.) Further, and more significantly, the ALJ pointed out multiple inconsistencies between Dr. Dao's observation that Plaintiff ambulated at a slow pace without her walker and the doctor's assessment that Plaintiff required an assistive device, and the record, which reflects that Plaintiff had a strong and steady gait and did not require an assistive device. (*Id.*, citing AR 1424, 1437, 1891, 3796, 4903.)

In addition to the records cited by the ALJ, Dr. Dao's opinion that Plaintiff required a walker for ambulation does not comport with other evidence contained in the record. For example, in her function report completed on September 22, 2021, Plaintiff indicated that she did not require any assistive devices. (AR 1253 (indicating "N/A" when asked if she required the use of crutches, a walker, a wheelchair, cane, or other); AR 5252 (functional assessment conducted by inpatient physical therapist on July 7, 2022, indicating that Plaintiff did not require an assistive device to walk 150 feet); AR 5912 (Plaintiff's report that she did yoga daily); AR 5952 (Plaintiff's report that she did yoga and walked her dogs); AR 6025 ("Casual gait normal" noted by Plaintiff's neurologist on October 3, 2022, four months prior to her examination with Dr. Dao); *but see* AR 4254 (hospital note reflecting Plaintiff's report that she used a cane for walking); AR 5266 (hospital note reflecting that

Plaintiff was ambulatory but used a cane as needed for long distances). Plaintiff's records, in large part, refute Dr. Dao's observation and assessment.

Additionally, while Plaintiff claims that she met the criteria in August 2020 for a wheelchair at Kaiser's wheelchair clinic, this does not appear to be the case. Rather, it appears that Plaintiff sought a wheelchair for outdoor use, in order to obtain a workplace accommodation from Home Depot, but this did not meet the criteria that the wheelchair be used in the home in order to move around safely. (AR 1397, 1398.) Substantial evidence in the record supports the ALJ's inconsistency finding. *See Sandgathe*, 108 F.3d at 980 (defining substantial evidence as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"); *Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high.").

## C. ALJ's Evaluation of Subjective Symptom Testimony

Plaintiff's third contention is that the ALJ failed to articulate clear and convincing reasons to reject her subjective limitations relating to POTS. (Dkt. No. 18 at 16-19.) The Court disagrees.

### 1. Applicable standards

It is up to the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 416.929(b). Second, the ALJ evaluates the intensity and persistence of the claimant's

symptoms to determine the extent to which they limit the ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 416.929(c). When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *Lambert*, 980 F.3d at 1277; *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102).

### 2. Plaintiff's subjective symptom testimony

At the administrative hearing, Plaintiff testified that her hobbies included watching YouTube and listening to music but stated that she had to pause both frequently because pain caused her to lose her concentration. (AR 1056.) She stated that she felt unable to work because she goes to the bathroom every ten to fifteen minutes to throw up due to her gastroparesis. (AR 1058.) Plaintiff testified, "Hundreds of times a day I throw up." (AR 1059.) She stated that her anxiety prevents her from leaving the house, and depression renders her unable to get out of bed some days. (AR 1060.) Plaintiff testified that when she tried to work in 2021, she was unable to because of POTS, which caused her to faint and have seizures. (AR 1061.)

### 3. ALJ's findings regarding Plaintiff's POTS-related symptoms

The ALJ determined that Plaintiff satisfied step one of the two-step analysis. (AR 25.) At the second step, the ALJ stated, "[T]he claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Regarding Plaintiff's POTS-related symptoms, for which Plaintiff claimed to require an assistive device due to frequent falls and fainting spells, the ALJ explained:

> The claimant's statements concerning the alleged intensity, persistence, and limiting effects of the claimant's symptoms on the ability to ambulate are inconsistent with other evidence and the observations of others. At the hearing, the claimant alleged that she had difficulty walking because of pain. Specifically, the claimant claimed that she had pain with ambulation and struggled walking for extended periods. The claimant also suggested [to Dr. Dao] that she required an assistive device to ambulate. The alleged symptoms and their effects on ambulation, however, are inconsistent with other evidence and the observations of others. On October 16, 2019, the claimant was ambulatory with a steady gait. On January 3, 2019, the claimant had an independent gait with no assistive devices. On February 27, 2020, the claimant had an independent gait and used no assistive devices. On February 25, 2020, the claimant was "negative for gait disturbance." On November 12, 2021, the claimant was ambulatory with a strong and steady gait. On June 26, 2022, the claimant was negative for gait disturbance. On September 21, 2022, Kaiser Permanente records indicate the claimant participates in yoga and walks her dog. Accordingly, the undersigned finds that other evidence and the observations of others regarding the claimant's ability to ambulate are inconsistent with the alleged intensity, persistence, and limiting effects of the claimant's symptoms. In addition, based on this evidence and other evidence detailed in this decision, the assertion that an assistive device was required for ambulation is rejected.

(AR 25-26 (citations omitted).)

### 4. Analysis

In discounting Plaintiff's testimony, the ALJ identified inconsistencies between Plaintiff's statements that she required an assistive device and the evidence in the medical record. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). As discussed above, Plaintiff's records contain numerous entries inconsistent with her statements that she requires a walker or other assistive device. Thus, the ALJ's identification of the inconsistencies relating to Plaintiff's alleged need for an assistive device has the "power to convince" the Court that he properly discounted Plaintiff's testimony due to these inconsistencies. *See Smartt*, 53 F.4th at 499.

      Additionally, daily activities may form the basis of an adverse credibility determination when evidence concerning the claimant's daily activities contradicts her testimony, or when the activities meet the threshold for full-time work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021). "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Nevertheless, "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted) (superseded on other grounds by 20 C.F.R. § 404.1502(a)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (stating that an ALJ may properly consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" when assessing credibility). Here, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's daily activities, including yoga and walking her dog, were inconsistent with the alleged severity of her limitations. (*See* AR 5912 (Plaintiff's report that she did yoga daily); AR 5952 (listing Plaintiff's activities as "household chores, TV and internet, yoga and walks dogs"); AR 255 ("She says she is very active in her church and also enjoys walking her dogs.").) Plaintiff's daily activities thus constituted a specific, clear, and convincing reason to discount her subjective symptom testimony.

///
///
///
///
///
///
///
///

## IV. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated: September 23, 2025

Hon. Steve B. Chu
United States Magistrate Judge